THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ALFRED ZARAGOZA, JR., Defendant-Appellant.

First District (4th Division)   Nos. 77-626, 77-627 cons.

Opinion filed May 11, 1978.

Scott D. Sherwin, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ROMITI delivered the opinion of the court:

Alfred Zaragoza, Jr., defendant, was charged by traffic complaints with leaving the scene of an accident involving injuries and with failure to yield the right-of-way. (Ill. Rev. Stat. 1975, ch. 95½, pars. 11—401 and 11—901.) Following a bench trial, he was found guilty as charged in the two

complaints. The record discloses defendant was sentenced to a term of 120 days in the House of Correction on the conviction for leaving the scene of an accident and was assessed costs and fined in the aggregate amount of $20 on the conviction for failure to yield the right-of-way. He contends the State failed to prove his guilt beyond a reasonable doubt, and that the term of incarceration constituted an abuse of the trial court's discretion and violated the purpose of sentencing in Illinois.

We affirm.

An automobile accident occurred on the evening of August 19, 1976, at the intersection of Ogden and 51st Avenues in Cicero, Illinois. Ogden at that point is a State-through highway bearing four lanes of traffic, two eastbound and two westbound. 51st Avenue is a north-south two-lane street which intersects Ogden Avenue, forming a "T" intersection due to railroad tracks across Ogden. Traffic proceeding onto Ogden Avenue from 51st Avenue is controlled by a stop sign.

The complaining witness testified that she, with her 3-year-old son as a passenger, was driving her automobile in the left eastbound lane on Ogden Avenue near 51st Avenue at the time in question. The vehicle was proceeding at 38 miles an hour in a 40-mile-per-hour zone. As her vehicle was "almost past" the 51st Avenue intersection, it was struck in the right rear by an "old blue cadillac, turquoise cadillac" vehicle which had proceeded through the stop sign on 51st Avenue without stopping. She did not see the driver of the Cadillac, nor did she take its license number. The complaining witness testified further that she saw the Cadillac approach the stop sign and thought it was going to stop, but that it proceeded through the traffic control. She related that she and her son had been "very shaken" by the accident, and they had to be removed from the scene by ambulance. She suffered a concussion in the mishap and was hospitalized about five days. Her son suffered facial injuries, which eventually might result in the loss of several teeth, and he had been afraid to ride in the car afterward.

The investigating Cicero police officer testified that he arrived at the scene about two minutes after receiving a radio dispatch of the accident and saw only the car belonging to the complaining witness. He observed damage to the rear right portion of her vehicle, including turquoise paint transferred from another vehicle, and also observed on the ground parts from another vehicle, consisting of a portion of a headlight rim. The officer interviewed witnesses at the scene, from whom he received a description of the second car involved in the mishap which he broadcast over his police radio. Upon driving from the scene about 10 minutes after his arrival, he observed a car matching the description of the second car parked in an alley about one block from the accident site. This car was turquoise in color, had damage to the right front end, and was missing

pieces of its headlight rim. The officer observed defendant looking at the damaged portion of the car and apparently attempting to pull the right fender away from the wheel. Defendant told the officer that he had been involved in an accident "at the corner" and that he left the scene because he was "shook" and did not know what else to do.

After final arguments, the trial court found the evidence overwhelming and entered a finding of guilty on both charges. During the hearing in aggravation and mitigation the State brought out that defendant was currently on three years' probation for aggravated battery. The defense offered in mitigation that defendant was married, employed and a member of the civil defense, fire department and veterans' organization, he was also active in community affairs. It was also brought out by the defense that defendant cooperated with the police in this matter, that he admitted his involvement therein and was thus rehabilitated, and that no one was seriously injured in the accident. The court noted that a person trained in civil defense should know how to react to stress situations, whereas defendant left the scene without assisting the injured parties. The court further noted the traumatic effect which the occurrence had upon the child involved.

Upon request by the trial court, the State recommended incarceration for a period of 120 days. Defense counsel argued this sentence would jeopardize defendant's employment status, and requested work release, while conceding the court to be the "final arbitrator" of the sentence. The court stated the term recommended by the State was less than that contemplated by the court but sentenced defendant to the 120-day term. In response to defense counsel's request that the *mittimus* be stayed until after the ensuing holidays, for defendant's family reasons, the court remarked that defendant's current felony probationary status was in jeopardy due to this conviction and he therefore might be inclined to flee. The court also stated that the sentence imposed was for punishment and not for rehabilitation.

Defendant maintains his guilt was not proved beyond a reasonable doubt since he was not identified as the operator of the second vehicle involved in the mishap and since the "sketchy" description of the second vehicle and his alleged admission to the police officer were insufficient to prove his guilt.

■■ Proof of an offense may be established by circumstantial evidence. Inferences drawn by the trier of fact from such evidence will be accepted by the court of review unless such inferences are inherently impossible or unreasonable. (*People v. Stanley* (1976), 44 Ill. App. 3d 85, 358 N.E.2d 69.) Defendant was connected to this accident by evidence directly linking him to the second vehicle. He was located by the officer a short distance from the scene of the accident, where he was apparently

attempting to repair the vehicle, and he at that time admitted to the officer his involvement in an accident at the corner and his flight therefrom. It was also shown that defendant proceeded through the stop sign in violation of the statute. On all the evidence, the trial court properly found defendant guilty of both offenses as charged.

In contending that the term of incarceration imposed by the trial court was an abuse of discretion and contrary to the purpose of sentencing in Illinois, defendant claims that he was sentenced for his involvement in an automobile accident, which did not involve intent or violence. He also says the trial court heard nothing in aggravation of the offenses other than improper hearsay concerning the immaterial aggravated battery conviction and that the court ignored the mitigating circumstances adduced at the hearing.

■■ Defendant was in no manner prejudiced by the trial court's consideration of his current probationary status as a felony offender in setting the term of incarceration. Defense counsel affirmatively brought this status to the court's attention prior to the trial, and no objection was raised during the hearing in aggravation and mitigation when the State again related such information to the court. *People v. Darrah* (1965), 33 Ill. 2d 175, 210 N.E.2d 478.

■■ Defendant's claim that he was sentenced to a term of incarceration for an offense lacking in intent or violence and that the court failed to consider mitigating circumstances in setting punishment is unavailing. The court heard evidence that defendant, a person trained in emergency situations, left the scene of an accident involving injuries to two persons. The trial court could well have concluded that his action in driving into an alley a block from the scene and his attempt to pull the car fender away from the wheel was a deliberate attempt on his part to avoid detection in rendering the car more drivable. The court also heard evidence as to the extent of the injuries to the woman and child in the other car which defendant had left at the scene, and was aware that defendant was currently on felony probation. Leaving the scene of an accident involving injuries is a Class A misdemeanor, punishable by a term of incarceration up to one year, or a fine up to $1,000 or both. (Ill. Rev. Stat. 1975, ch. 95½, par. 11—401(c), and ch. 38, pars. 1005—8—3 and 1005—9—1.) The sentence imposed by the trial court was clearly within the terms of the statute and, under these circumstances, was not an abuse of the court's discretion. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

In view of the foregoing considerations, the judgments of the circuit court of Cook County are affirmed.

Judgments affirmed.

DIERINGER and LINN, JJ., concur.