THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GREGORY DON STARNES, Defendant-Appellant.

Fifth District    No. 79-235

Opinion filed September 29, 1980.

John H. Reid and Jeff M. Plesko, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Charles R. Garnati, State's Attorney, of Marion (Martin N. Ashley and Nicholas B. Svalina, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE HARRISON delivered the opinion of the court:

Defendant, Gregory Don Starnes, of Creal Springs, Illinois, appeals from a conviction for theft of property over $150 in value (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(e)(1)) in the circuit court of Williamson County. Trial was conducted on November 21 and 22, 1978, and judgment entered December 29, 1978, imposing a three-year term of imprisonment to be served consecutively upon the expiration of sentences ordered by the Williamson County Circuit Court in cases numbered 75-CF-230, 75-CF-231 and 76-CF-26. Appellant contends (1) that the proceedings below failed to prove him guilty beyond a reasonable doubt, (2) that improper aggravating factors were considered in sentencing, and (3) that it was erroneous for the court to impose a sentence which was to be served consecutive to an anticipated revocation of parole stemming from incarceration in connection with the above-mentioned cases. We affirm the judgment of the circuit court.

Theft of a Hodaka motorcycle from the porch of its owner's home

was reported on August 17, 1978, and testimony indicated the taking occurred sometime during the late evening of the 16th or the early morning of the 17th of August. Defendant's neighbor, Roy Lambert, witnessed Starnes wheeling the vehicle toward a wooded area at the back of the Lambert home on the afternoon of August 18. A short time later the witness saw him walking back toward the Starnes home without the motorcycle. Lambert walked back into the area where he had seen Starnes headed and discovered the vehicle covered with brush collected from the surrounding area. Lambert testified that he phoned the Williamson County Sheriff's Department after noting its serial number and Deputy James Odom responded to the call. The defendant was identified as the party Lambert had seen, and largely based on this identification and subsequent photographic and in-court identification Starnes was found guilty.

■■ Appellant contends that the evidence admitted by the State at trial was insufficient to demonstrate his guilt beyond a reasonable doubt. The State counters by arguing that the issue has been waived since in its estimation the matter was not brought to the court's attention in a post-trial motion. Generally, issues not preserved in a written post-trial motion are deemed to have been waived. (*People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856.) However, the "failure to prove a material allegation of an indictment beyond a reasonable doubt is fatal to a judgment of conviction, and the question may be raised for the first time upon review. [Citations.]" (*People v. Walker* (1955), 7 Ill. 2d 158, 160, 130 N.E.2d 182; see *People v. Harrawood* (1978), 66 Ill. App. 3d 163, 168, 383 N.E.2d 707.) Such an insufficiency in the evidence presented may, at the discretion of the appellate court, be noticed under the exception for plain error necessary to mitigate the harshness of the waiver rule where justice so demands. Both *Walker* and *Harrawood* addressed the issue of variance between the evidence adduced at trial and the essential elements stated in the indictment charging the offense. Appellant's post-trial motion in the present cause expressly argues for an allegedly fatal variance with considerable specificity. We must agree with the prosecution, however, that appellant's brief makes contentions distinguishable from matters raised by post-trial motion. The bulk of the argument before us attacks the sufficiency of proof in respect to the credibility and veracity of the State's chief witness. Lambert's identification of the defendant is said to be questionable considering the conditions under which he observed Starnes so that his testimony cannot have been properly considered clear and convincing. Additionally, counsel suggests a self-serving motivation on the part of the witness in contacting the sheriff's department. None of these matters is addressed in even general terms by the post-trial motion.

■■ Nor do we find in the present record evidence so closely balanced

that the issue is properly reviewable in the absence of preservation below. (*People v. Howell* (1975), 60 Ill. 2d 117, 120-21, 324 N.E.2d 403; *People v. Richardson* (1977), 49 Ill. App. 3d 170, 172, 363 N.E.2d 924.) Thus, appellant's argument as to the sufficiency of the evidence is not properly before this court.

The remaining issues relate to the sentencing of the defendant. First, it is argued that the court below mistakenly construed section 5—5—3.2 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—5—3.2(a)(2)), a subsection of chapter V of the Unified Code of Corrections concerning factors in aggravation during the presentencing procedure. Specifically, the trial court lent a meaning to the word "compensation" which is disputed by the appellant. The germane portion of the statute reads:

> "(a) The following factors shall be accorded weight in favor of imposing a term of imprisonment or may be considered by the court as reasons to impose a more severe sentence under Section 5—8—1:
>
> * * *
>
> (2) the defendant received compensation for committing the offense."

It is his position that the legislative intent of the words "compensation for committing the offense" could not have been based in the desire to penalize an offender for temporarily acquiring or retaining the fruits of a crime, such as, in the instant case of theft, the motorcycle which was taken. Rather, it was intended to respond to situations in which remuneration was provided by another as consideration for the accomplished or intended criminal act. Starnes persuasively argues that neither the plain meaning nor the grammatical construction of the phrase can logically be considered to convey the meaning found in the trial court's interpretation of "compensation."

■■ The State cites *People v. Conover* (1980), 83 Ill. App. 3d 87, 403 N.E.2d 708, as direct authority favoring the trial court's application of this meaning. It is beyond dispute that the majority in that case so interpreted the statutory language. However, we find it necessary to agree with the dissenting opinion of Justice Stouder in *Conover.* Unlike the majority, we would attribute a meaning to the phrase which is identical to that found present in section 9—1(b)(5) of the Criminal Code of 1961 (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 9—1(b)(5)), which contemplates aggravating factors pointing toward the imposition of the death penalty for murder. There the statutory language expressly refers to "a contract, agreement or understanding by which [the offender] was to receive * * * anything of value in return for committing the murder * * *." We believe that section 5—5—3.2(a)(2) is not inconsistent with but a more concise statement of

the same principle enacted in regard to murder for hire. If such were not the case, every accomplished act of theft, burglary, robbery, or other crime, the immediate fruits of which temporarily or permanently enrich the perpetrator, would fall into the category of an offense committed *for* compensation. Such a factor in aggravation would amount to twice punishing the culprit for the same material element of a given crime by means of enhancing an otherwise less severe sentence. Put another way, such a construction confuses the elements of the crime itself with the context of its commission.

■ Although we find the trial court's interpretation and application of section 5—5—3.2(a)(2) erroneous, we do not believe that the sentence imposed would have been different had the matter not been considered. Since the defendant's perceived attitude and demeanor during the proceedings coupled with his prior criminal record were the chief factors leading to the determination of sentence, we find that the consideration of the issue of compensation was harmless error. See, *e.g., People v. Jones* (1977), 56 Ill. App. 3d 600, 606, 371 N.E.2d 1150.

Appellant next argues that the trial court improperly enhanced the sentence imposed in the belief that Starnes perjured himself in presenting his defense. Pertinent excerpts of the court's commentary in passing sentence are set forth below:

"Now the jury heard all the testimony and decided that you were not telling the truth. They didn't believe you. They believed Mr. Lambert and the circumstances surrounding the offense—the motorcycle was back of Mr. Lambert's house and in close proximity to your house—and they heard your alibi which I might say I thought was pretty far-fetched myself—and I think the jury obviously felt such. * * * So at any rate, I think it was pretty clear that the jury didn't buy your story. * * * Now the Supreme Court of the United States has recently ruled that the Court can consider the fact that a person has not told the truth when he testified in his defense. * * * I believe that I can consider and will consider is [*sic*] that if a person feels remorse for the crime he committed then he is half way to being rehabilitated. If an individual realizes that he's done wrong and says 'I committed the crime—I'm sorry—go ahead and pass sentence—I won't do it again'—then you sort of have a feeling in experience with people that that individual realizes that he does have a problem and he's sorry for what he's done and I think the Court should grant some mercy, as opposed to an individual who says 'I didn't do it', and takes the witness stand and tells some outlandish story and then is found guilty by a jury. * * * Here it was a situation where the jury either believed you or believed the State's case. Obviously they believed the State's case

which leads me to think that after observing you in the trial and all that you're not remorseful—you're not sad—and from your past record it appears that you really don't care. The property was there—it was easy to take—so you took it. I believe that somewhere or other you've lost the morality that most of us have * * *. I have to some way fashion a sentence now which—try to take into consideration protection of society and at the same time because of your young age think that maybe you will change. Everybody makes mistakes. I've made a million of them myself and I make them every day so you can change if you want to. At any rate the State wants ten years and you want probation. One to three didn't do you any good last time. So I'm going to take into consideration the fact that it didn't and I'm going to sentence you to the Department of Corrections for a term of imprisonment of three years."

The Supreme Court opinion referred to is *United States v. Grayson* (1978), 438 U.S. 41, 57 L. Ed. 2d 582, 98 S. Ct. 2610, which involved the Federal criminal prosecution of an inmate for prison escape under 18 U.S.C. §751(a)(1976). The court was requested to rule upon the issue of whether it is improper for a sentencing judge to give consideration to a defendant's false testimony observed during trial. The defendant argued that to do so would constitute punishment for the crime of perjury where there had been no indictment, trial or conviction, a violation of due process of law. He also contended that it would effectively "chill" the exercise of a defendant's right to testify in his own behalf. The focus of the *Grayson* majority in reaching its determination was on the various purposes of incarceration, paramount among which it considered the relatively modern concept of rehabilitation. (*United States v. Grayson* (1978), 438 U.S. 41, 46, 57 L. Ed. 2d 582, 587, 98 S. Ct. 2610, 2613-14; see also Ill. Rev. Stat. 1977, ch. 38, par. 1001—1—2(a).) Especially significant in this regard is the concern of the sentencing judge in predicting rehabilitative potential through the use of a broad array of material information descriptive of the defendant's past and present physical, psychological and social context. (438 U.S. 41, 48, 57 L. Ed. 2d 582, 588, 98 S. Ct. 2610, 2614-15.) It concluded that among the many indices in this global process is the defendant's testimonial veracity.

"A defendant's truthfulness or mendacity while testifying on his own behalf, almost without exception, has been deemed probative of his attitudes toward society and prospects for rehabilitation and hence relevant to sentencing." (*United States v. Grayson* (1978), 438 U.S. 41, 50, 57 L. Ed. 2d 582, 590, 98 S. Ct. 2610, 2616.)

And in chastening terms the court noted:

"Nothing we say today requires a sentencing judge to enhance, in some wooden or reflex fashion, the sentences of all defendants whose testimony is deemed false. Rather we are reaffirming the authority of a sentencing judge to evaluate carefully a defendant's testimony on the stand, determine—with a consciousness of the frailty of human judgment—whether that testimony contained willful and material falsehoods, and, if so, assess in light of all the other knowledge gained about the defendant the meaning of that conduct with respect to his prospects for rehabilitation and restoration to a useful place in society." *United States v. Grayson* (1978), 438 U.S. 41, 55, 57 L. Ed. 2d 582, 592, 98 S. Ct. 2610, 2618.

Appellant argues that in *People v. Cowherd* (1978), 63 Ill. App. 3d 229, 380 N.E.2d 21, the court reiterated a long-standing general rule prohibiting the consideration of evidence of arrests or other charges not resulting in conviction at aggravation and mitigation hearings; that in contradistinction to *Grayson* the Fourth District reaffirmed that Illinois courts, above and beyond any Federal constitutional threshold, prohibited the enhancement of sentence for perjury perceived by the judge during the course of the trial (*People v. Cowherd* (1978), 63 Ill. App. 3d 229, 235); and that the remarks quoted should be interpreted as betraying an accusation of perjury resulting in an enhanced sentence. Thus, he contends that in actuality the defendant's continued assertion of innocence was discredited as perjury and rewarded with distinct and additional punishment.

Although not cited by the appellants, this district adopted the position of *Cowherd* in *People v. Meeks* (1979), 75 Ill. App. 3d 357, 367, 393 N.E.2d 1190. As with *Cowherd,* the *Meeks* opinion rested upon the fact that the trial court had expressly concluded that the defendant perjured herself and noted that this consideration was a motivation for its denial of probation. In *People v. Greenlee* (1976), 44 Ill. App. 3d 536, 544, 358 N.E.2d 649, a decision rendered prior to the opinion in *Grayson,* this court reversed the trial court regarding the imposition of sentence for the express reason that in fixing sentence it had "imposed an additional penalty" because of the perceived perjury.

However, the present facts are inapposite. The record reveals a sentencing judge fully cognizant of both the letter and the spirit of *Grayson* and equally aware of the position which Illinois courts have maintained. Following his remarks on *Grayson* Judge Lewis continued:

"Our Appellate Court says this Court cannot consider it and said it prior to the Supreme Court ruling. Now, I don't know what law governs. I don't know if our Fifth District Appellate Court would abide by the ruling of the Supreme Court or not. The only thing—

*the only point—I believe that I can consider and will consider is that if a person feels remorse for the crime he committed then he is half way to being rehabilitated."*

Since the date of sentencing herein we have in fact followed *Grayson* in *People v. Nedelcoff* (1980), 87 Ill. App. 3d 849, 409 N.E.2d 316. See also *People v. Meeks* (1980), 81 Ill. 2d 524, 411 N.E.2d 9.

■■ *Grayson* reaffirmed the propriety and necessity of the conduct of "an inquiry broad in scope, largely unlimited * * *" in respect to the nature and sources of material information needed in the sentencing process. This inquiry extends beyond the boundaries of the presentence report and may legitimately consider the conduct of trial, including the demeanor of the accused. (*United States v. Grayson* (1978), 438 U.S. 41, 50, 57 L. Ed. 2d 582, 590, 98 S. Ct. 2610, 2616.) There is equal support for the consideration of such factors under Illinois law. *People v. Dukett* (1974), 56 Ill. 2d 432, 452, 308 N.E.2d 590, *cert. denied* (1974), 419 U.S. 965, 42 L. Ed. 2d 180, 95 S. Ct. 226; *People v. Hayes* (1978), 62 Ill. App. 3d 360, 365-66; *People v. Petty* (1975), 33 Ill. App. 3d 183, 184, 337 N.E.2d 249.) Here, the remarks relating to a lack of forthrightness and veracity on the part of the defendant are in no way to be construed as backhandedly charging, trying, convicting and sentencing Starnes for perjury. They rather describe an impenitent response measured against the goals of the criminal justice system. It was the defendant's attitude toward the proceedings, revealed in his demeanor at trial, together with the important consideration of his prior criminal record which indicated he had committed offenses of the same nature before, that influenced the trial court. It cannot be doubted that the trier of fact, benefiting from a far more immediate view of the totality of the proceedings, was provoked to comment on the credibility of defense testimony by all of the factors mentioned. A judge must routinely make a difficult estimation of the complexities which sentencing presents. The needs of society and the personal aspect of the particular defendant before him make a mix not easily reducible, even with the aid of statutorily articulated factors defining aggravating and mitigating circumstances. The presentence hearing was designed as a forum for more fully and formally articulating the process. But it would be absurd and counterproductive to assume that every judicial statement indicating an accused was less than credible during trial is to be interpreted as a new charge of perjury. We believe that the circuit court properly focused on the criterion of Starnes' rehabilitative capacity and repeatedly commented on a perceived lack of remorse, a failure of moral responsiveness. This was not error, but attentiveness to the gravity of the situation. See *People v. Stokes* (1979), 75 Ill. App. 3d 813, 821, 394 N.E.2d 681; *People v. Galati* (1979), 75 Ill. App. 3d 860, 865, 393 N.E.2d 744; *People v. Genovese* (1978), 65 Ill.

App. 3d 819, 823, 382 N.E.2d 872; *People v. Hayes* (1978), 62 Ill. App. 3d 360, 365, 378 N.E.2d 1212; see also Ill. Rev. Stat. 1977, ch. 38, par. 1001—1—2(a).

In addition, we cannot question the propriety of the sentence imposed where the record provides a substantial independent basis upon which the trial court's determination may have equally been based. The defendant pleaded guilty to two separate counts of theft in 1975 and was sentenced to four years' probation on each. In 1976 he was convicted of burglary and sentenced to one to three years' imprisonment. At the same time probation was revoked in the earlier cases and Starnes was ordered to serve a one- to three-year sentence in respect to each, all of the above to run concurrently. In view of his prior record and the fact that the present repeated offense was committed while on parole, we can perceive no substantial reason why the present sentence should be reduced. *People v. Morgan* (1974), 59 Ill. 2d 276, 282, 319 N.E.2d 764; see also *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 878; *People v. Choate* (1979), 71 Ill. App. 3d 267, 389 N.E.2d 670.

Finally, appellant contends that the trial court erred in imposing sentence for the present offense in that the term specified was intended to be served consecutive to an anticipated sentence in a parole revocation proceeding, where the latter had not yet occurred. *People v. George* (1979), 75 Ill. App. 3d 140, 393 N.E.2d 1182, is cited as authority for the proposition that a sentence is improper where its implementation requires the application of "considerations outside of the trial court's knowledge." It is argued that the sentence is contingent to an independent future event which necessarily creates a failure of certainty as to when one term of imprisonment ends and the ensuing term is to begin. The failure of certainty is alleged to require reversal and remand. We disagree.

■■ The erroneous sentence reviewed in *George* was couched in the following terms:

> " "* * * to run consecutive with any now pending sentence or any such further sentence received by virtue of a parole violation. * * *' " (75 Ill. App. 3d 140, 144.)

We there followed the standard of *People v. Walton* (1969), 118 Ill. App. 2d 324, 333, 254 N.E.2d 190, which requires that a sentence be "so complete as not to require construction by the court to ascertain its import, and so complete that it will not be necessary for a nonjudicial or ministerial officer to supplement the written words to ascertain its meaning." Where a term of imprisonment is intended as cumulative punishment effective at a future date and upon the termination of another sentence, it must be specified with such certainty that the termination of the first and the commencement of the second may be ascertained from the record. Where the intention of the judge imposing such imprisonment

is clearly ascertainable from the record by reference to the court, the case number, the date, the nature of the offense or offenses, and the parties involved in the initial term, then the requirement of certainty is satisfied. (*People v. Toomer* (1958), 14 Ill. 2d 385, 387, 152 N.E.2d 845.) We are of the opinion that those requirements have been satisfied in the present case. The trial court stated:

> "Now, this is to be served consecutively to any prior convictions from this Court in 75-CF-230, 75-CF-231, and 76-CF-26. If your parole has run out you will just have to serve the three years with a day off for every day served for good behavior. If it has not run out then they will add that on."

Unlike the sweeping language of *George* quoted above, the court here imposed sentence with specific reference to clearly identified prior dispositions. The record contains certified copies of each of the judgments in the cases listed by number so that no further judicial construction is required for implementation by correctional officials. The mere fact that the precise date cannot be fixed as to one term's expiration and another's beginning is not fatal. For, by analogy, if such specificity were necessary, consecutive sentences subject to parole could never be validly imposed. That proposition was expressly rejected by the Illinois Supreme Court in *People v. Ferguson* (1951), 410 Ill. 87, 101 N.E.2d 522, *cert. denied* (1952), 343 U.S. 910, 96 L. Ed. 1327, 72 S. Ct. 643. We believe the present sentence is fully consistent with the logic of *Ferguson*. Accordingly, we affirm the judgment of the circuit court of Williamson County.

Affirmed.

JONES, P. J., and KASSERMAN, J., concur.